**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-1247-TC

---

TONYA R. C.,[1]

*Plaintiff*

v.

MICHELLE KING,
ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Tonya C. claims that she cannot work due to conditions related to her spine and bladder. She seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax*

---

[1] Plaintiff is referred to only by first name and initials to protect her privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

*v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not reweigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not

disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff claims she is unable to work due to severe spine and bladder-related ailments. Doc. 6 at 2–8.[2] Her disability claim was denied in October 2021. *Id.* at 2. After two subsequent hearings, the ALJ denied her claim. *Id.* She then requested a review with the Appeals council, which also denied her claim. *Id.* She now appeals.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. Adm. Rec. at 19. At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine degenerative disc disease (DDD), status post anterior cervical discectomy and fusion (ACDF), C5-7; lumbar spine DDD, status post lumbar fusion, L5-S1 and post laminectomy syndrome; history of complex regional pain syndrome; left knee patella dislocation, chondromalacia & cartilage loss; right ankle tenosynovitis and osteophyte; migraine headaches; interstitial cystitis; and medullary sponge kidney disease." *Id.* at 19–20. The ALJ also found that Plaintiff had several non-severe impairments. *Id.* at 20. The ALJ then proceeded to step three and determined that Plaintiff did not have an impairment that met or medically equaled a listing. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ then proceeded to define Plaintiff's residual functional capacity. Adm. Rec. at 21. The ALJ found that Plaintiff could "perform sedentary work as defined in 20 CFR 404.1567(a)." *Id.* Specifically,

> "the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks, and can sit for 6 hours in an 8-hour workday with normal breaks. The claimant

---

[2] All document citations are to the document and page number assigned in the CM/ECF system except for factual references to the Administrative Record (Adm. Rec.).

3

>can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally stoop and crouch but cannot kneel and crawl. The claimant can occasionally balance [and] reach overhead bilaterally. The claimant can have occasional exposure to vibration but cannot be exposed to hazards such as unprotected heights and machinery with moving mechanical parts. The claimant can understand, remember and carry out simple instructions with normal breaks."

*Id.* The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* In particular, the ALJ discussed Plaintiff's claimed symptoms of needing to lie in a recliner most of the day and having to frequently use the restroom. *Id.* at 22. The ALJ also reviewed the medical opinions and treatment notes of several providers: Larry Anderson, M.D.; Adam K. Russell, PT; Rami Mortada, M.D.; Amisha R. Khicha, M.D.; and Dany H. Zayour, M.D. Adm. Rec. at 22–30.

At step four, the ALJ determined that Plaintiff could not perform her past work as a phlebotomist, nail technician, or receptionist. Adm. Rec. at 29. The ALJ then proceeded to step five. Relying on vocational experts, the ALJ determined that suitable work for someone with Plaintiff's age, education, experience, and RFC exists in significant numbers in the national economy. *Id.*

Plaintiff now contends that the ALJ made two errors. Doc. 6 at 10. She argues first that the ALJ failed to support the RFC determination with substantial evidence by failing to evaluate her urinary limitations. *Id.* at 12. And second, she argues that the ALJ made a similar mistake by failing to properly evaluate her spinal limitations. *Id.* at 17.

## II

Plaintiff argues that the ALJ's determination is wrong in two principal ways. But she has failed to establish the absence of substantial evidence to support the ALJ's factual findings. As a result, the Commissioner's final decision is affirmed.

## A

**1.** Plaintiff claims the ALJ erred by failing to properly evaluate her urinary limitations. Doc. 6 at 12. The ALJ found that Plaintiff's claimed symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Adm. Rec. at 22. Plaintiff argues that the ALJ erred by "fail[ing] to identify any actual inconsistencies between the evidence and [her] reports." Doc. 6 at 14.

The ALJ's finding was supported by substantial evidence. The ALJ noted that, as early as 2019, Plaintiff's treatment notes showed that her interstitial cystitis, one of the conditions that causes Plaintiff's asserted bladder symptoms, was "stable on Oxybuynin [sic]," and overall "appears to be stable." Adm. Rec. at 25. The ALJ also noted that other treatment notes showed Plaintiff's interstitial cystitis was not as severe as her other issues and that Lyrica helped with the pain. *Id.* And the ALJ pointed out that Plaintiff's medullary sponge kidney, another condition that causes bladder symptoms, did not give rise to any complications. *Id.* (citing Adm. Rec. at 89) (noting that Plaintiff's symptoms were "minimal," her medullary sponge kidney was not causing kidney stones, and that her interstitial cystitis treatment had "worked well, with very good results").

Plaintiff takes issue with the ALJ's reliance on certain treatment notes. Doc. 6 at 15–16. She argues that the ALJ interpreted the word "stable" to mean "better," and that "stable" only means the condition was not worsening. Notwithstanding this stability, Plaintiff argues, the fact remained that she was "chronically impaired due to her condition." *Id.* at 16.

Plaintiff's assertions do not undermine the conclusion that the ALJ's RFC assessment was supported by substantial evidence. Even accepting Plaintiff's construction of the word "stable," the ALJ's conclusion did not rest solely on this word in the treatment notes. To the contrary, the ALJ pointed to treatment notes that negated Plaintiff's assertion of the severity of her limitations. *See* Adm. Rec. at 25. Plaintiff may disagree with how the ALJ weighed this conflicting evidence, but that is a task reserved to the ALJ. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). And where evidence can support a conclusion either way, the ALJ's conclusion is not to be disturbed. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Plaintiff's arguments ask for a reconsideration of the evidence, something a federal court may not do. *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014). Federal district

courts are not "at liberty to second-guess" the ALJ's reasoned and supported determination. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1182 (10th Cir. 2020).

**2.** Plaintiff claims the ALJ also erred by failing to properly evaluate her spinal limitations. Doc. 6 at 17. She asserts that the ALJ did not explain the conclusion that Plaintiff's reported spinal limitations were not entirely consistent with the medical evidence in the record. *Id.* at 18.

Plaintiff testified in her benefits hearing that "she could stand for no more than 15 minutes, and she could sit at one time for no more than 15 minutes." Doc. 6 at 18. She explained that "she spent most of the day positioned in a recliner with her legs elevated to help reduce her back pain." *Id.* (quotations omitted). But the ALJ adopted an RFC that "required the ability to stand for two hours and sit six hours per eight-hour workday." *Id.* Plaintiff insists that the ALJ did not account for her need "for a reclining chair or more frequent postural changes." *Id.*

The ALJ's RFC determination vis-à-vis Plaintiff's spinal limitations was supported by substantial evidence. The ALJ noted that much medical evidence in the record contradicted Plaintiff's asserted limitations and symptom intensity. For example, the ALJ noted that around June 2019, an X-ray of Plaintiff's spine showed an overall stable neck. Adm. Rec. at 22, 690, 946. The ALJ also noted that treatment notes from December 2019 showed that Plaintiff was responding well to medication and therapy. *Id.* at 22. And the ALJ also looked at Plaintiff's medical treatment: Around January 2020, Plaintiff's primary care physician was treating her conservatively, recommending cold packs, heat packs, massages, good posture, stretching, and acupuncture. *Id.* at 23; *see Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015) (noting that conservative treatment may undermine the credibility of plaintiff's assertion of limitations); *Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010) (noting that ALJs can use medical treatment to evaluate the intensity, persistence, and limiting effects of a symptom). Additionally, the ALJ noted that during an ER visit in July 2020, Plaintiff had no complaints of back or abdominal pain, and a physical exam showed that her neck was supple. Adm. Rec. at 23–24. The ALJ also highlighted that Plaintiff had additional musculoskeletal examinations that showed no muscular atrophy, no overt signs of significant muscle weakness, a supple neck, and normal motor strength. *Id.*

The ALJ also considered and rejected the opinion of Larry Anderson, M.D., who proposed certain limitations based on Plaintiff's spinal condition. Dr. Anderson opined that Plaintiff could only "sit or stand for 10 minutes and could not do anything for eight hours." Adm. Rec. at 27. But the ALJ found Dr. Anderson's opinion unpersuasive because treatment notes did not support his proposed limitations. *Id.* at 28. For example, the ALJ pointed to treatment notes that recommended "home back strengthening exercises" and that noted Plaintiff described her pain as "mild." *Id.* at 734–739. The ALJ pointed to other treatment notes as well that showed Plaintiff's gait and coordination were intact. *Id.* at 889. And the ALJ highlighted that orthopedic specialists who saw Plaintiff for knee and ankle issues did not restrict her activities or recommend elevation. *Id.* at 1105. Finally, the ALJ found that Dr. Anderson's opinion was contradicted by his own recommendation that Plaintiff perform various exercises. *Id.* at 28.

Plaintiff takes issue with the ALJ's reliance on certain treatment notes. When analyzing Plaintiff's spinal limitations relative to her RFC, the ALJ looked to treatment notes that described Plaintiff's gait and station as "normal." Adm. Rec. at 23. Plaintiff posits that "the absence of strength and sensory deficits does not necessarily undermine [her] subjective allegations of pain." Doc. 6 at 19 (quoting *Kellams v. Berryhill*, 696 F. App'x 909, 915 (10th Cir. 2017). This much is true, but the ALJ did not rely solely on those treatment notes. The ALJ considered notes related to Plaintiff's gait and station, but also those that related to Plaintiff's prescribed treatment plans and reported pain levels, as described above. Reading the ALJ's decision as a whole, there was substantial evidence for the ALJ's determination of Plaintiff's RFC. *See Cobb v. Astrue*, 364 F. App'x 445, 450 (10th Cir. 2010) (noting that an ALJ's decision may be read "as a whole").

Finally, Plaintiff argues that the ALJ cherry-picked the record and "failed to acknowledge when exams reflected abnormalities." Doc. 6 at 20. She notes that "[m]any examinations within the record reflect weakness, numbness, reduced range of motion, stiffness, and tenderness, among other limitations." *Id.* Plaintiff claims the ALJ's conclusion, in light of these contrary reports, failed "to address abnormal examination findings within the record." *Id.*

That is not the case. The ALJ documented a variety of physical examinations that reflected Plaintiff's abnormalities. *See, e.g.*, Adm. Rec. at 23 ("[T]he claimant has a history of spinal fusion L4-5. Results of [an] MRI revealed degenerative disc disease and stenosis [and]

7

spondylotic protrusion, an enhancing annular tear, and enhancing scar tissue. Concentric protrusion and facet hypertrophy was present."); *id.* ("[Plaintiff] has been diagnosed with post laminectomy syndrome, lumbar, secondary to removal of hardware."); *id.* at 24 ("[An] MRI . . . revealed bone contusion pattern consistent with transient lateral patellar dislocation and moderate to marked cartilage loss in the lateral patella."). The ALJ considered these abnormalities when arriving at an adequate RFC. *See id.* at 26–27 (noting that the RFC included limits given Plaintiff's "headaches, pain, and fatigue," lower extremity issues, and neck pain). And when analyzing various doctors' opinions, the ALJ also considered and attempted to harmonize or contextualize them in light of Plaintiff's abnormalities. For example, the ALJ noted that Dr. Anderson found that Plaintiff had "back and neck pain with radiculopathy as well as headaches with very severe pain." *Id.* at 27. And the ALJ noted Dr. Anderson's opinion that Plaintiff was "totally disabled . . . stumbled often due to left leg pain and weakness . . . [and] had neck pain radiating to the upper extremities with weak grip and loss of sensation in the fingers." *Id.* at 28. But ultimately the ALJ found Dr. Anderson's opinion unpersuasive, as described above, and arrived at an RFC that accounted for Dr. Anderson's diagnoses. *See id.* at 28 ("[T]he residual functional capacity herein does restrict against kneeling due to the claimant's knee impairment."). Put simply, Plaintiff's contention that the ALJ mistakenly relied on cherry-picked physical examinations is without merit, *contra* Doc. 6 at 20, and Plaintiff has failed to show that the ALJ's RFC determination was unsupported by substantial evidence.

## III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: February 12, 2025        s/ Toby Crouse
                                                              Toby Crouse
                                                              United States District Judge